UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH ANDREAS, | Case No. 1:08-cv-170 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Carmody |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant, | |

## ORDER

**Overruling the Plaintiff's Objections and Adopting the R&R;
Affirming the Commissioner's Denial of Social Security Disability Benefits;
Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to United States Magistrate Judge Ellen S. Carmody, who issued a Report and Recommendation ("R&R") on Tuesday, January 6, 2009. "'Within ten days after being served with a copy of an R&R, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.'" *Smiles v. City of Grand Rapids*, 2008 WL 5071723, *1 (W.D. Mich. Nov. 24, 2008) (Paul L. Maloney, C.J.) (citing 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b) and W.D. MICH. LCIVR 72.3(b)) and *Deruso v. City of Detroit*, 121 F. App'x 64, 66 n.2 (6th Cir. 2005)). Andreas timely filed objections on Thursday, January 15, 2009. *See* FED. R. CIV. P. 6(a) and (b) (when calculating a period that is shorter than eleven days, the court must exclude weekends and federal holidays, and the resultant deadline is moved one day later if it falls

on a weekend or federal holiday).

## DISCUSSION

The R&R correctly concluded that substantial evidence in the record supported the ALJ's determination that Andreas was not disabled from her alleged disability onset date (August 13, 2000), *see* AR 89-91, through her date last insured ("DLI"). Specifically, substantial evidence supported the ALJ's determination that Andreas's severe impairments – longstanding but improved tendinitis of rotator cuff and impingement of the right shoulder with scapular winging due to lax tendons, substance addiction disorder [sic], mood disorder NOS, and anxiety disorder NOS – rendered Andreas unable to perform her past relevant work but left an RFC sufficient for about 25,000 jobs in Lower Michigan.

Andreas lodges two objections to the R&R. First, Andreas renews her contention that the ALJ failed to follow two Social Security Rulings (SSR 96-2p and SSR 96-5p) and two regulations governing determination of how much weight to accord a treating physician's opinion (20 C.F.R. § 404.1527). Andreas argues as follows,

> The Magistrate Judge has asserted that Dr. Shareghi's opinions in his Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities are not supported by other medical findings. That is inaccurate. Doctor Divina, a shoulder specialist, has diagnosed plaintiff as suffering from acute impingement syndrome, right shoulder with cervical myosotis [sic, perhaps myositis?] in December 1999. (AR 197-256) That supports Dr. Shareghi's diagnosis of permanent nerve damage in right shoulder and unable to use right arm for work beyond 5# in his assessment of plaintiff's limitations in 2003 (AR 410-415) after he has treated plaintiff for pain and impaired use since 1999 for migraine headaches that further incapacitate plaintiff. (AR 267-292)
>
> The Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities provided by Dr. Tom Dobbins, M.D., on 12/6/05 also contains some of the same limitations, but not all of the same, as opined by Dr. Shareghi.

> (AR 616-619) It supports and defers to Dr. Shareghi's [opinion regarding Andreas'] functional limitations from her pain.
>
> Shareghi's opinions are based on his records[,] which are the only medical evidence concerning her shoulder pain and migraine headaches. Dr. Shareghi's opinions are supported by a fair reading of the entire record and should have been given controlling weight. The ALJ is not free to accept and enforce some of the Commissioner's regulations and not others in order to justify an unfavorable decision. Plaintiff relies upon her argument in her Reply Brief as to the balance of this section's arguments.

Andreas's Objections at 3-4 (paragraph breaks added).

Preliminarily, the court notes that Andreas cannot simply refer to, or purport to incorporate, arguments or authorities from earlier briefs. Andreas's objection document could and should have articulated each argument in full and cited all appropriate authorities. It is not the court's job to scour earlier filings for reasoning or citations that Andreas failed to include in her objections, and the court will not do so. *See Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) (Cleland, J.) ("An objecting party may not simply 'incorporate by reference' earlier pleadings; similarly merely reproducing an earlier unsuccessful motion . . . (or an unsuccessful response to the other party's motion) is not a sufficient objection to the magistrate judge's analysis, and will ordinarily be treated by the court as an unavailing general objection.") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008); *see also Johnson v. Mati*, 2006 WL 3147738, *1 (E.D. Mich. Oct. 31, 2006) (same); *US v. Hinman*, 2005 WL 958395, *2 (N.D. Iowa Apr. 22, 2005) ("The parties are cautioned that they must file new objections to this Report and Recommendation. They may not incorporate their previous objections by reference."), *R&R adopted sub nom. US v. Dose*, 2005 WL 1806414 (N.D. Iowa July 28, 2005).[1]

---

[1] *Cf. Holder v. Nicholson*, 287 F. App'x 784, 790 (11th Cir. 2008) ("[A] party may not incorporate by reference arguments presented to the district judge . . . .") (citing *Four Seasons*

In any event, Andreas' objection to the ALJ's rejection of treating physician Shareghi's opinion is unavailing. The ALJ had several valid reasons, grounded in objective medical evidence in the record, for discounting Shareghi's diagnosis that Andreas suffered from "permanent nerve damage" in the right shoulder, chronic fatigue syndrome, and fibromyalgia, *see* AR 410, and thus was unable to do any work at all.

First, the ALJ found that Shareghi's notes regarding Andreas's right shoulder cannot be credited because the notes on this score were internally inconsistent: "On the one hand, he clearly stated that she has a shoulder so mobile that the scapula is popping out with movement, and then states that her shoulder is frozen, which are complete opposite conclusions on his part." *See* AR 19 and 298. Andreas has not explained how one can logically reconcile those two findings by Dr. Shareghi. Nor has Andreas showed that it is inappropriate for an ALJ to question a physician's credibility or judgment when that physician renders an opinion that includes objectively incompatible factual statements. *Cf. Brooks v. SSA*, 2008 WL 4411434, *9 (S.D. Ohio Sept. 29, 2008) (Michael Barrett, J.) (ALJ did not err in rejecting treating physician's RFC opinion, because the treating physician's June 2005 RFC assessment contradicted his May 2005 RFC assessment; "his treatment records contain no change in the nature of characteristic of plaintiff's impairments to explain the drastic change in his opinion of plaintiff's abilities.") (citing *Stanley v. HHS*, 39 F.3d 115, 118 (6th Cir. 1994)).

The ALJ's second reason for rejecting Dr. Shareghi's disability opinion was that it was contradicted by objective medical evidence; namely, an MRI (magnetic resonance imaging) test showed that Andreas suffered only mild shoulder impingement syndrome, which would not be

---

*Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004)).

disabling. Andreas has not explained how one can reconcile Shareghi's diagnosis of *acute* impingement syndrome with this MRI, and she presents no authority that it is error for an ALJ to favor an objective medical test result over a physician's contrary opinion – even a treating physician.

Third, the ALJ reasonably found that Dr. Shareghi's diagnosis of "permanent nerve damage" in the right shoulder and alleged inability to lift more than five pounds was contradicted by electromyelogram and nerve-conduction studies which "showed evidence of only mild right suprascapular neuropathy without denervation." *See* AR 20 and 444. Andreas has not explained why it was error for the ALJ to credit the electromyelogram and conduction studies over Dr. Shareghi's contrary assertion, which was not supported by any contrary electromyelogram or nerve-conduction studies.

The ALJ noted a fourth item that led to the decision to reject Dr. Shareghi's disability opinion entirely rather than accord it some – if less than controlling – weight. Every consulting medical specialist who examined Andreas rendered opinions starkly at odds with Dr. Shareghi's, *see* AR 22: as the ALJ noted, orthopedic surgeon Dr. Paul J. Drouillard, O.D., found that Andreas had a "normal" right shoulder, *see* AR 427; a second orthopedic surgeon, Dr. Edward J. Westerbeke, M.D., diagnosed only "mild" right-shoulder capsulitis, and opined that her prognosis was good, as her condition could be alleviated by manipulation, *see* AR 433; and Dr. Greg J. Baker, O.D., reported normal strength and good range of motion in the right shoulder and remarked, "[i]t is unclear why five to six years later [after the injury] this is still bothering her", *see* AR 22, 23, 539 and 541. Dr. Shareghi asserted that other orthopedic surgeons agreed with his opinion that Andreas's shoulder problem was irremediable, but he did not identify or provide supporting evaluations from those alleged individuals, nor has Andreas provided such alleged supporting

5

evaluations. *See, e.g., Cole v. SSA*, 2008 WL 4738076, *7 (E.D. Mich. Sept. 23, 2008) (Julian Cook, J.) ("Plaintiff relies heavily upon the fact that his family physician . . . and his cardiologist . . . opined, in separate questionnaires provided to them by plaintiff's counsel, that he was unable to perform the physical demands of light or sedentary work. * * * Since [the two treating physicians] offered little objective medical evidence to support their respective statements of disability, their opinion[s] need not have been any special weight."); *Samples v. Astrue*, 2008 WL 4279475, *16-17 (S.D. Ohio 2008) (S. Arthur Spiegel, Senior D.J.) (ALJ did not err in according more weight to non-treating psychologists' opinion than treating psychologist's opinion; although treating psychologist had examined 16 times from February 2004 through June 2005, "far more . . . than any of the [non-treating psychologists] individually or collectively", his opinion was "was inconsistent with the opinion of other mental health professionals" and based only on mental-status examinations, not objective "tests").

Fifth, as the Magistrate Judge correctly notes, the ALJ found that "while Dr. Shareghi asserted that Plaintiff was also suffering from chronic fatigue syndrome and fibromyalgia, the doctor's treatment notes indicate that he never diagnosed or treated Plaintiff for any such impairments." R&R at 18. Andreas has not presented evidence that Dr. Shareghi ever diagnosed or treated her for either CFS or fibromyalgia. The absence of such evidence can support the inference that Dr. Shareghi was either making a diagnosis that he knew he had no basis for – an inference that can appropriately lead an ALJ to find Shareghi not credible *across the board*, not merely unpersuasive or unsupported on the particular CFS/fibromyalgia diagnoses themselves.

Sixth, the ALJ reasoned that the severe functional limitations opined by Dr. Shareghi were contradicted by Andreas's own reports of her daily activities. *See* R&R at 18 (citing Tr 20-21).

Andreas's objections do not attempt to show how her own reported activities are consistent with the functional limitations asserted by Shareghi – let alone that any reasonable ALJ would be *compelled* to find such consistency on this record.

Seventh, Andreas overstates the degree to which the December 6, 2005 ability-to-work form of Dr. Tom Dobbins, M.D., tends to support Dr. Shareghi's opinions that her shoulder problem was irremediable and prevented her from working at all. Andreas states that Dr. Dobbins's form "contains some of the same limitations, but not all of the same, as opined by Dr. Shareghi", Objections at 3. But Andreas's objections do not attempt to actually identify the areas of agreement and difference between Dobbins' and Shareghi's opinions, let alone to show that the areas of difference were not substantial and/or not material to a disability determination. Moreover, Andreas tries to make something out of nothing when she asserts that Dr. Dobbins' form "supports and defers to Dr. Shareghi's [opinion regarding Andreas'] functional limitations from her pain", Objection at 3. Without more, a statement that one is "deferring to" someone else does not constitute a reasoned analysis and conclusion that the person deferred-to is correct and supported by objective medical evidence, sound medical theory, or experience with similar symptoms.

In short, the ALJ adequately considered, and discussed his consideration of, the factors enumerated in 20 C.F.R. § 404.1527(d): primarily, whether the treating physician's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques", whether it was "inconsistent with the other substantial evidence in [the] case record", and how the evidence in the record informed the ALJ's determinations on each of these factors. Regardless of the other factors which the regulation required the ALJ to consider – such as the length, nature and extent of the treatment relationship, 20 C.F.R. § 404.1527(d)(2), and Dr. Shareghi's degree of specialization

7

in this field, 20 C.F.R. § 404.1527(d)(5) – the evidence and opinions mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Shareghi's opinion little or no weight. No matter how long Shareghi had been treating Andreas or how much experience he has with such conditions, the record supports the ALJ's findings that his notes were internally inconsistent and that his opinion contradicted an MRI *and* electromyelogram / nerve-conduction studies.

**Andreas's second objection to the R&R is that the ALJ made an impermissible credibility determination** because his credibility findings lack the requisite nexus with the evidence of record. *See* Andreas's Objections at 4 (citing *Ryan v. SSA*, 1998 U.S. Dist. LEXIS 19050 (6th Cir. Oct. 21, 1998)). Andreas objects as follows,

> The ALJ obviously did not like something about the plaintiff and punished her for dislike garnered during that hour[-]long hearing. The ALJ determined she was exaggerating her symptoms in spite of both her doctor's asserting that she was not a malinger[er] and that her symptoms were consistent with their limitations. The ALJ believed from his "medical" pedestal that Dr. Shareghi was a criminal and recklessly prescribed narcotics that plaintiff did not need for pain control. This rash judgment on the ALJ's part is indicative of the quality of judgment he employed to assess plaintiff's credibility. The plaintiff relies upon her arguments in her brief and reply brief for further argument for the plaintiff's credibility.

Andreas's Objections at 4-5.

This objection lacks merit. As the Magistrate Judge noted, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability," *Swift v. SSA*, 2009 WL 198526, *10 (W.D. Mich. Jan. 27, 2009) (Maloney, C.J.) (quoting *King*, 742 F.2d at 974), but the regulations "make clear, however, that a claimant's 'statements about pain or other symptoms will not alone establish that [she is] disabled'", *Swift*, 2009 WL 1985236 at *10 (quoting 20 C.F.R. § 404.1529(a) and citing *Walters v. SSA*, 127 F.3d 525, 531 (6th Cir. 1997)).

In determining that Andreas was not credible with regard to the severity of her pain and the

limitations that the pain imposed, the ALJ expressly relied, in part, on her own report of her activities. *See* R&R at 20 (citing AR 24-26); *see also* AR 120-23 (activities questionnaire filled out by Andreas); AR 127-32 (friend Nicole Barron's report states that Andreas "on a typical day" shops, runs errands, visits her granddaughter, reads and plays with her dog, and that Andreas also sometimes drives, cooks, talks on the telephone, and baby-sits). *See, e.g., Burlew v. Astrue*, 2009 WL 197543 (E.D. Ky. Jan. 26, 2009) (Bertlesman, J.) ("[T]he ALJ noted that, at his August 29, 2006 consultative psychological examination, the claimant reported that he walks a quarter of a mile to a half a mile every day, and visits with a friend down the road every other day. In 1995, he told Dr. Baldwin that he fished and hunted whenever he wanted, watched a lot of television and attended rooster fights. This evidence all supports the ALJ's findings that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible."). Andreas's objections make no attempt to explain why an ALJ would be *compelled* to find that her reported activities were consistent with her claimed level of pain and claimed attendant limitations.

    Moreover, the ALJ based the adverse credibility determination on "evidence suggesting that Plaintiff had attempted to get one of her doctors to provide her with a particular diagnosis for the purpose of obtaining disability benefits." *See* R&R at 20 (citing AR 24 and 574-76). Andreas's objections do not address this potentially legitimate basis for the ALJ to question her credibility. Nor do Andreas's objections address the ALJ's stated reliance on a therapist's statement that the therapist questioned her credibility because of what she called her "very very dishonest" statements about her motivation or reason for participating in therapy. *See* R&R at 20 (citing AR 24 and 603). The ALJ reasonably could conclude not only that Andreas lied about therapy, but that she was

willing to lie, and did lie, about other matters relevant to her alleged disability as well. *Cf. Morris v. Astrue*, 2007 WL 1068430, *6 (S.D. Ind. Mar. 20, 2007) (*"It was perfectly reasonable for the ALJ to conclude that Plaintiff was not fully credible given the fact that he was dishonest in other areas of his life* and . . . was not complying with treatment regimens that could relieve many of his symptoms.") (emphasis added).

Lastly, Andreas's objections do not attempt to show that the nature and frequency of her medical treatments are consistent with her claimed level of pain and attendant limitations – let alone that they could not reasonably be viewed as *in*consistent with those claims. Andreas never underwent surgery on her right shoulder. Rather, in December 1999 and January 2000, respectively, Dr. Divina examined her and instructed her to participate in physical therapy and start a weight-training regimen, *see* AR 284 and 289, and in March 2000 Dr. Shrirang Lele found full motor strength in the right shoulder, no tenderness or muscle spasm in the right shoulder or the cervical spine, and a "good" prognosis, *see* AR 434-45. Andreas did receive a cortisone steroid injection in the right shoulder from Dr. Divina in January 2002, *see* AR 269, but Andreas has not pointed to record evidence of any course or pattern of such injections. In addition, after an April 2003 examination of Andreas, Dr. Paul Drouillard opined that Andreas's continuing consumption of substantial amounts of prescription narcotics was not warranted by pain caused by her physical conditions, but was instead "ill-advised" and due to her narcotic "habituation." *Cf. Moses v. Astrue*, 2008 WL 4425541, 11 (S.D. Ohio Sept. 30, 2008) (Susan Dlott, J.) ("Plaintiff's last and by far weakest Statement of Error was that the ALJ should have afforded more weight to Plaintiff's subjective reports of pain. Plaintiff's doctors treated her conservatively. She was advised to exercise and stop smoking. She completed a course in physical therapy and was prescribed less

powerful pain medications as she progressed in treatment. Her pain levels steadily decreased and her ability to sleep without interruptions increased. She had one steroidal injection, but declined the second. No surgery was ever performed, nor was Plaintiff ever hospitalized for her back condition. * * * The ALJ did not discount Plaintiff's subjective reports of pain, nor could she, but the ALJ did not believe that the medical record as a whole supported Plaintiff's subjective reports of disabling pain. There was no error.").

For these reasons, Andreas fails to undermine the R&R's conclusion that substantial evidence supported the ALJ's adverse determination regarding her credibility.

**ORDER**

Accordingly, having reviewed the complaint, the R&R, and plaintiff's timely objections:

Plaintiff's objections [document # 14] are **OVERRULED.**

The Report and Recommendation [document # 12] is **ADOPTED.**

The Commissioner's denial of disability benefits is **AFFIRMED**.

The complaint is **DISMISSED.** This case is **TERMINATED** and **CLOSED**.

This is a final and appealable order.

**IT IS SO ORDERED this 18th day of February 2009.**

/s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge